Good morning, your honor, and may it please the court, I represent Mr. Hawkins, and I'd like to make a conviction argument and a sentencing argument to the court. First, as to conviction, my question is, where is the sufficiency of the evidence to support a conviction in this case? And I think you approach that by first asking, where is the evidence of 28 grams of crack? When you start to shoot an arrow through this thing to look at it, that's where I think you start to see how the evidence doesn't strike to the charges in the case. The only place I see that evidence is in the April 7, 2015 telephone call. I think that's got to be undisputed. And it's essentially the government's case throughout the entire proceeding. I featured that, they even featured that in their opening statement, saying that that was what they were going to hear, and then they heard it. Was there a 404 instruction with that? No, sir, there was not, your honor. Nor was that conversation mentioned in the government's trial memorandum. I think it's document 366 that kind of was presented to the court as to what this case is about. So, the opening conversation that is relied upon has a couple of fundamental problems. One, it's going in the wrong direction. The theory is that Mr. Ware is going to Georgia and bringing back kilos of powder cocaine. However, this conversation is interpreted that Mr. Hawkins, a distributor, is trying to introduce a kilo of cocaine to Mr. Ware. Also, the problem with that is the expert testifies that when you drop 28, you actually get 32. Meaning, when you convert 28 grams, you actually gain 4 grams, which really introduces what I think to be the most pervasive problem throughout the whole case is the expert's testimony. So, let me ask you, before you move to the expert stuff, why in response to the government's argument that they make in the brief, isn't the April 7th call, which occurred within weeks of the call that sort of underlies the charged conduct here, part of the same series or transaction, a series of events? It's maybe close because the government puts a testimony that it's cocaine, but it's going in the wrong direction. It's incomplete. Mr. Ware says, I'm not interested, and the call is over. So, I would say it's uncharged, unrelated conduct. It changed the entire theory of the case. In the government's trial memorandum, you don't see them referencing that call at all. So, then the most pervasive problem, I think, is the idea of the expert testimony. The only witness as to Mr. Hawkins in the entire case was Mr. Russell, who testified as a 702 expert. But you have a problem, don't you? Because there wasn't a real objection to it that I could see. Well, Your Honor, I would agree it's not a textbook objection. I couldn't find one at all. Well, Your Honor, on page 119 and 122, immediately after the April 7th testimony, Mr. Blanchard comes back in and says, Your Honor, he's testifying like he can read their minds. I understand your- He didn't move to strike it. He did not move to strike it, Your Honor. But he is- It's the same objection he's making to Russell all along. He starts out, yes, sir. He starts out objecting to it, of course. That's fine. My law enforcement officers can testify to drug jargon. And I think everybody agrees to that. And so, there's no reason to object. But right after the April 7th telephone conversation, the defense counsel is saying, Your Honor, he's testifying like he can read their minds. And so, he is objecting. Not textbook. Nobody's briefed in a waiver of failure to bring an objection. So, he's raising that. And the interesting thing at 119 and 120 is the court says, yeah, you need to couch that in better 702 language. And I'm going to instruct the jury that they can make a determination of the foundation and whether it warrants merit. 702 says that there is a gatekeeping responsibility. And I don't think anybody recognized that the horse was getting out at this point. But before the horse leaves, you had a sentencing issue that you wanted to raise. Yes, sir. I do have a sentencing issue, Your Honor. The sentencing issue is, I believe there's not sufficient evidence to support that the nine kilograms over the 220- You have a lien argument. I'm sorry? A lien argument. Yes, sir, Your Honor. Well, my client is advancing a lien argument that when you increase the mandatory minimum sentence, that that is a decision that has to be made by the jury. And then in light of the Lopez case, the jury's verdict was dispositive or a benchmark or a cap. So, Your Honor, the other argument under the sentencing is that there was not sufficient for the nine kilos of wares retained in Georgia. And he's also held responsible for the 299 grams of crack that are converted by others downstream. So, neither of those are within the scope of his level of participation. And there's really no determination as to what his scope was. It's discussed on 43 and 44 of the sentencing transcript as potentially a low-level distributor. And on page 63 of the transcript, the court says that it was within his scope that he understood, i.e., he knew it was part of the agreement to distribute powder that related to the converted by others. But I'm not sure there's a finding that that was within his scope of criminal activity. I see my time's up. James? May it please the Court. Closing counsel, good morning. I'm Susan James and I'm here on behalf of Appellant Wallace McCree. I was not trial counsel and didn't do the brief in this case, but I'm familiar with it. The problem that I see, and I've done criminal cases, I've done criminal cases, and it's commonplace for them to put an officer on and say, you know, when they're talking watermelons, they mean drugs. They're talking cocaine. And that, to me, seems to be what the case law speaks to, is that if they're aiding the trier fact, then it's appropriate to let them do that with some leeway. We don't have code word issues in this case. There's a few times that he talks about it, but the judge, as co-counsel pointed out, the trial judge, cautioned and said, why don't you couch your questions like, based on your experience as a law enforcement officer. There's an issue over whether it was 702 or it was 701 in the government's brief, but in this particular case, he was allowed to testify, he was allowed to validate, and this sets a bad precedent, because he was allowed to validate his own case. He was the first one out of the box to testify. He testified extensively, and he went into elaborate detail about, and by the way, there is an objection by Mr. Saucer, I believe it's page 60 of the trial record, that would be volume one, I might stand corrected on that, where he said, I don't object to him as an expert, but I do object if he's going to testify to the ultimate issue. And quite frankly, that's what he did throughout all of this. He interpreted, where are you going, what they're doing, what they're thinking, what they're saying. It went far beyond that, and quite frankly, in looking at it with fresh eyes, I think the issue of aiding the trier fact in this case went beyond a pale, and it became really improper vouching, and it's not raised in the briefs, but I do feel compelled to say that, because he basically acted as if... I counted up the pages of testimony, and I think that 90 pages were devoted to Mr. Russell's testimony, excluding the exhibits that were published during that testimony, as opposed to 100 pages, all the other witnesses put together. Did you look at the time, the amount of time Russell testified as compared to the rest of the testimony? I know his testimony was extensive, and it was very prejudicial in that it came out first, it inferred to the jury that he had special knowledge of the case, and he was the case agent. I mean, it's like doing your own audit. I mean, he was in there, he had a vested interest in the outcome... And he was the case agent. And he was the case agent, and I just think that if this case stands as it is with what happened, I think it was inherently unfair, I think it denied both appellants a fair trial, and I think that there needs to be some parameter, whether the court reverses or not, as to this particular issue. So let me ask you a question. You mentioned that the government, you know, raises a question about whether this is 701 or 702. So I take the arguments that I've been hearing from you and co-counsel to say that this is improper 702 evidence, but if it is 701 evidence, don't we have precedent that would allow it? Well, there is some precedent that will allow it, but they refer to him constantly. The questions are, if you go back through the transcript, in your expert opinion, in your expert opinion, and they called him that, and you've got a lay jury out there, and they're like, okay, he's a qualified expert. I mean, the truth be that he was on the force for, I think, six years total, and he can say he was involved in all these drug cases. I think that was his maybe first or second Title III case. But if you put any agent on there and let them sit up there and talk endlessly with no restrictions about their opinion of the evidence, it's going to come out like this every time. Because why would they say something contrary? I mean, if it was, put them off, let them say, when they're saying watermelons, they mean cocaine. When they're saying lumber, they mean cocaine. I get that, but this is way beyond that. And quite frankly, I've been doing this probably as long as y'all have been up there, and I've not seen a case that unraveled like this in terms of that witness getting to say everything he wanted to. And I cited U.S. versus, I mean, I provided y'all a copy, and I talked to the government, U.S. versus Eister, and U.S. versus Marshall. I had both of those cases, and both of them were reversed on appeal, but they dealt with improper vouching. And I think what happened here is he got up there and said, everything I did was right. And it would look a little better if it had been another expert that didn't have such a vested interest in the case. So, my time's out. Ms. Stewart. May it please the Court. My name is Sandra Stewart, and I'm here representing the United States in this appeal. As far as the coded language is concerned, the government did file a motion in limine pre-trial to have the evidence admitted under Rule 702 as expert testimony. That motion was granted. At the time of trial, however, the government started to put on the testimony of the coded language, and there was an objection. And I think it is important to note that the objections at trial are not the arguments based on the the arguments today are not based on the objections that were made at trial. At trial, Mr. Hawkins' attorney simply says, I object to this testimony based on the testimony being to the ultimate issue. And he specifically defines what he means by the ultimate issue, and he says the elements of the offense. This goes directly, he's testifying that the elements of the offense exist here. He then says if that's not, if he doesn't testify to that, I'm fine with the testimony. So, the objection wasn't clear as far as the arguments being made today. They weren't the same arguments. Aside from that, there's a lot of, there's been some argument made that the, that Mr. Russell was referred to repeatedly as an expert. That's simply not borne out by the record. Oh, oh. The questions. I read the record, and repeatedly the questions asked for expert testimony. Repeatedly asked for, based on your knowledge and experience, what you took this to mean. And expert opinion. But I also, the court never qualified him as an expert, never said this is an expert, never instructed the jury that he was an expert. And it cautioned them to take his opinion testimony that they were to take, that it was only his opinion that they were to look at the evidence and determine for themselves what it was. But really, allowing opinion testimony is the problem, not whether he's been identified as an expert. He's giving expert opinions. He's giving opinion, yes, he is. I'm not, I'm not disagreeing with you, Judge, on that. What I'm saying is, the jury wasn't completely, wasn't set, it wasn't told over and over again, this is expert testimony. So they didn't give it that extra added value that it's some sort of expert. I don't want to argue the point, but the question calls for an expert opinion. It seems like the jury would believe that he's giving opinion as an expert, so I don't understand the difference. Okay. But I don't want to take your time arguing about it. I did want to go on to the drug quantum, first of all, I'm going to talk about the evidence to support the conspiracy. There's more than sufficient evidence here to show that there was one conspiracy. We have Mr. Hawkins talking on the phone to numerous, the various parties that were involved in this conspiracy. And we have Carlos Ware talking to Carlos Bogan, we've got James Hawkins talking to Willie Jackson, Charles McCree are all talking together, to Keon Hall, Alonzo Prevo. And the idea that just simply because another supplier was being introduced into this, possibly into this ongoing conspiracy, makes it a separate conspiracy, simply doesn't make any sense. Especially since this was so close in time to the rest of the incidences that were going on in the intercepted phone calls talking about drug dealing. I'll also point out that in conversations with Carlos Ware, that Mr. Hawkins is having, it's obvious that Carlos Ware has had dealings with this person that he's trying to bring these additional kilos in through, because he says, I don't really trust these people, basically is what he's saying. I've dealt with them, I don't trust them, and I don't really want to deal with them. And I already have plenty of cocaine. So I don't think that the argument that there was a separate conspiracy is valid. And there certainly was enough evidence to support the conspiracy conviction in this case. There were thousands of conversations intercepted. There were a number of relevant conversations between the parties that I just named. Specific, the conversations to the crack cocaine, there were specific conversations about how to cook powdered cocaine into crack cocaine. And I would point out that there was evidence presented from which the jury could conclude that there were 28 grams or more of crack cocaine. And those conversations were for the May 15th conversation that Hawkins had with Willie Jackson, in which 31 grams were converted to 25 grams of crack cocaine. And the May 22nd, 2015 conversation, in which Carlos Ware and Hawkins are discussing converting the two bigs of powdered cocaine into crack cocaine. So there was evidence of a crack cocaine conspiracy as well, and that Hawkins knew about it. As to the drug quantities for Mr. Hawkins, the night he'll get a purchase of powder cocaine on May 16th, or the attempt to purchase it on May 17th, the court found that Hawkins was responsible for that nine kilograms. Mr. Hawkins is now arguing that the court could not find that based on the jury's verdict, that he was only responsible for 500 grams or more of powdered cocaine. But the, under Alleyne, the defendant is limited, I mean the court is limited by the statutory maximum and the statutory mandatory minimum as to what he can sentence. But he's not limited in finding the amount of cocaine that can be attributed to the defendant. In other words, For guideline purposes. For guideline purposes. Not for statutory purposes. Right, for guideline purposes. And the judge in this case did not sentence Mr. Hawkins based on the statutory mandatory minimum. But he's sentencing, but the statutory minimum relates to drugs, period. And in the guideline calculation, a whole lot of things unrelated to the drugs are added in. That's right, Judge Shelflight. So that's the government's argument. Is your argument that you can go above the mandatory minimum based on non-drug related factors? We're only talking about drug related factors here, so I'm not making that argument. If I understand your question. Well, for example, the criminal history category. Whatever drives the guideline up above the mandatory minimum. Yeah. Can you consider that in determining? As I understand it, the guideline range went beyond the mandatory minimum. It did. It was above the five year statutory mandatory minimum. Yeah. It was. And it actually, Mr. Hawkins was facing a 10 year mandatory minimum anyway, because of his prior conviction. But he was, the court didn't reference the 10 year mandatory minimum as it related to the amount of cocaine. Okay. I also wanted to mention one thing about the 74 grams of crack cocaine that was based on the Gibson proffer. The record in this case is a little bit strange because the defendant was allowed to personally make objections and the court did hear those objections, but the defense counsel didn't adopt those objections as its own, but the court did consider them. And I think in my brief, I wasn't clear that the court did consider that objection to the 74 grams of crack cocaine that was attributed to Hawkins. But even if you subtract that 74 grams of crack cocaine from the calculations, the sentencing guidelines range would remain the same. So any error there would have been harmless beyond a reasonable doubt. And I would point out that the reason, probably the reason that no evidence was presented was because nobody saw that Hawkins' objection actually was something that the government needed to present evidence on, because the agent was actually present and would have been put on the stand had anybody thought that it was necessary to do so. But regardless, any error was harmless. Does the court have any other questions? You don't want to respond to McRae? McRae's argument? You rest on your brief on McRae's argument? Yes, Your Honor. Okay. Mr. Harkin. Your Honor, just a few points. The court did instruct the jury on expert testimony. Diet 474, page 523. The government inquired as to expert testimony from Agent Russell about 48 times in regards to Mr. Hawkins alone. By my count, there were maybe eight inquiries as to him that included based on this investigation. I hope I provided the court with an OCR of the record where you can search that if you would like. But they referred to him in questioning as an expert 48 times, referred to the knowledge and experience more generally eight times? Eight times would be based on this investigation. Got it. Okay. The problem with that is he's testifying like think about a sports commentator. Bill Belichick, Frank Gifford, Chris Collins. If they're given narrative testimony of what's happening and they're given the aura of an expert, it takes on a whole different meaning. And that's what happened. You see that in the one-line text. Exhibits 14, A, B, C, D. So you see that. The sufficiency of the evidence. What did Mr. Hawkins do? What transaction did he participate in? What drugs did he buy? How much did he pay? Where is that? And that's where I'm saying that that point is missing. I think all cases, not that I've read them all, but if I were going to say one distinction is this case had no cooperating witnesses. No other witness who testified about somebody's involvement. Briefly, as to the lien, Your Honor, my client's position is that when he's made, a jury makes a determination on drug quantity, that is a significant factual determination. And yes, he got above the mandatory minimum, but that was driven by the drug quantities of which the jury already found. And I understand Lopez is a little bit different case outside of the Ninth Circuit. But his lien argument is that there is an increase in sentence, maybe not the mandatory minimum, but an increase in the sentence. Yep. Thank you. The issue in this case was, are these guys drug dealers? McCree and Hawkins, do they deal in drugs? That could have been answered without, if you've extracted the testimony of Russell. Because the jury could have heard it for the plain language that was there. And the government would have been able to argue and close them. That's ridiculous. You know they're talking about drugs. I mean, there would have been nothing to stop that. But now you've got the guy who has the most interest in the case other than the prosecutor validating his own case. Is the problem, just so I understand it, is the problem, as your co-counsel has emphasized, that they called him an expert repeatedly? Or if they had just said, in your knowledge and experience as a law enforcement officer, do you think watermelons refer to dope, would that have been okay? Or is it just sort of like labeling him an expert? They did that a few times. But here's an example, and this is volume two, page 27. He says, based on your training, experience, and knowledge of the investigation, are you able to provide an expert opinion as to what's taking place in this communication? And, of course, he said, yes, sir. And he went on and he elaborated. And they continue to ask that on page, volume one, 143. It says, based on your training and experience, and in your expert opinion, were you able to surmise what you thought Mr. McCree was referring to in that particular conversation? Yes, so I'm just trying to figure out if sort of the real clincher or killer, as the case may be, is them referring to him as an expert. Because we've got testimony I'm reading from a case called United States versus Jayuzzi, I suppose is how you pronounce it. A lay witness can provide interpretation of code words when the meaning of those words is not perfectly clear and needn't be a participant or observer of a conversation to do so. The issue here, though, is it went beyond that. It went so far beyond that because it wasn't just, he was explaining his theory. I mean, the whole testimony he gave was his theory of his own case. And what they were thinking, what they were doing, where they were going, Mr. Blanchard made that argument at trial and says, wait a minute, code words we understand, but not to tell us you're reading their minds and what they're doing. And I think that's the problem. And I think it's a real risky slope. Thank you for your. Thank you. Mr. Herndon, you were court appointed. We appreciate your having taken the assignment. Smith versus Haynes and Haynes. Just a minute, please. Thank you, Mr. Herndon.